**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| HAROLD E. RUTILA, IV,<br><br>*Plaintiff,*<br><br>vs.<br><br>RANGE VIEW MANAGEMENT LLC, et al.<br><br>*Defendants*. | Civil Action No.<br>2:26-cv-11457-JJCG-DRG<br>Assigned to<br>Honorable Jonathan J.C. Grey<br>Referred to Honorable David R. Grand<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

# TABLE OF CONTENTS


CONCISE STATEMENT OF THE ISSUES PRESENTED .................................... 9

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ 10

INTRODUCTION .......................................................................................... 10

FACTUAL AND PROCEDURAL BACKGROUND .......................................... 11

STANDARD OF REVIEW ............................................................................... 14

Default Judgment ......................................................................................... 14

Jurisdiction .................................................................................................... 15

ARGUMENT .................................................................................................. 18

1. This Court has subject matter jurisdiction over the claims. ........................... 18

2. This Court has personal jurisdiction over both Defendants. .......................... 18

a. Court's jurisdiction over Defendant Range View Management LLC ....... 18

b. Court's jurisdiction over Defendant Payam Sadeghi ................................ 21

3. Defendants' liability is established through default, and Defendants have forfeited any affirmative defense. .................................................................... 23

4. Defendants' text messages are actionable under the TCPA. .......................... 24

a. Plaintiff's § 227(b) claims .......................................................................... 26

b. Plaintiff's § 227(c) claims .......................................................................... 28

5. Under Charvat, 16 texts at issue herein permits recovery for a combined total of 32 violations .............................................................................................. 29

6. The Court Should Treble the Award Because Defendants' Violations Were Willful and Knowing. .......... 31

7. Costs and post-judgment interest. .......... 34

CONCLUSION .......... 34

# TABLE OF AUTHORITIES

## Cases

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
503 F.3d 544 (6th Cir. 2007) .......... 16

*Alea London Ltd. v. American Home Servs., Inc.*,
638 F.3d 768 (11th Cir. 2011) .......... 31

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) .......... 16

*Antoine v. Atlas Turner, Inc.*,
66 F.3d 105 (6th Cir. 1995) .......... 14, 15

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
204 F.3d 683 (6th Cir. 2000) .......... 22

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 17, 18

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) .......... 27

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) .......... 30

*Charvat v. NMP, LLC*,
656 F.3d 440 (6th Cir. 2011) .......... 10, 29, 30

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
183 F.3d 151 (2d Cir. 1999) .......... 15

*Dobronski v. WinRed, Inc.*,
No. 2:24-cv-12513, 2026 WL 2168723 (E.D. Mich. July 28, 2026) .......... 27

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......... 27

*First Nat'l Bank of Louisville v. J. W. Brewer Tire Co.*,
680 F.2d 1123 (6th Cir. 1982) .......... 17, 23

*Ford Motor Co. v. Cross*,
441 F. Supp. 2d 837 (E.D. Mich. 2006) .......... 14

*Fustok v. ContiCommodity Servs., Inc.*,
873 F.2d 38 (2d Cir. 1989) .......... 15

*Harris v. World Fin. Network Nat'l Bank*,
867 F. Supp. 2d 888 (E.D. Mich. 2012) .......... 31

*Howard v. Republican National Committee*,
164 F.4th 1119 (9th Cir. 2026) .......... 25

*Jackson Five Star Catering, Inc. v. Beason*,
No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013) .......... 23

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
106 F.3d 147 (6th Cir. 1997) .......... 16

*Lanier v. Am. Bd. of Endodontics*,
843 F.2d 901 (6th Cir. 1988) .......... 20

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 25

*Maryland v. Universal Elections*,
787 F. Supp. 2d 408 (D. Md. 2011) .......... 24

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 25

*Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*,
954 F.2d 1174 (6th Cir. 1992) .......... 16

*Miller v. AXA Winterthur Ins. Co.*,
694 F.3d 675 (6th Cir. 2012) .......... 16

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) .......... 18

*Oberlies v. Searchmont Resort, Inc.*,
246 Mich. App. 424 (2001) .......... 19, 20

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) .......... 17

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .......... 25

*Texas v. Am. Blastfax*,
164 F. Supp. 2d 892 (W.D. Tex. 2001) .......... 24

*Thomson v. Wooster*,
114 U.S. 104 (1885) .......... 14

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
No. 1:10-cv-253, 2012 WL 4074620 (W.D. Mich. June 21, 2012) .......... 23

*Vesligaj v. Peterson*,
331 F. App'x 351 (6th Cir. 2009) .......... 14, 15

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 17, 18, 22

*Ward v. NPAS, Inc.*,
63 F.4th 576 (6th Cir. 2023) .......... 19

**Statutes**

28 U.S.C. § 1331 .......... 18

28 U.S.C. § 1391(b)(2) .......... 18

28 U.S.C. § 1920 .......... 34

28 U.S.C. § 1961 .......... 34

47 U.S.C. § 227 .......... 10

47 U.S.C. § 227(a)(4) .......... 10, 25, 30

47 U.S.C. § 227(b) .......... 9

47 U.S.C. § 227(b)(1)(A)(iii) .......... 27

47 U.S.C. § 227(b)(3), (c)(5) .......... 10, 31

47 U.S.C. § 227(b)(3)(B) .......... 29

47 U.S.C. § 227(c)(1) .......... 28

47 U.S.C. § 227(c)(5) .......... 28

Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 .......... 10

Mich. Comp. Laws § 600.705 .......... 16

Mich. Comp. Laws § 600.715 .......... 16

Pallone-Thune TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 .......... 10

**Rules**

E.D. Mich. LR 55.2 .......... 10

Fed. R. Civ. P. 4(e)(2)(B) .......... 13

Fed. R. Civ. P. 54(c) .......... 34

Fed. R. Civ. P. 54(d)(1) .......... 34

Fed. R. Civ. P. 55 .......... 14

Fed. R. Civ. P. 55(b)(2) .......... 9, 10, 14, 15

**Regulations**

47 C.F.R. § 64.1200(c)(2) .......... 26

47 C.F.R. § 64.1200(e) .......... 25

47 C.F.R. § 64.1200(f)(15) .......... 25, 26

**Other Authorities**

10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed.) .... 14

*In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd 6574 (2013) ....... 24

*In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd 7961 (2015) .............. 26

*In re Targeting & Eliminating Unlawful Text Messages*, FCC 23-107 (rel. Dec. 18, 2023) ........................................................................................................ 26

Report and Order, CG Docket No. 02-278, FCC 03-153 (2003) ........................... 25

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Whether the Court should enter default judgment against Defendants under FED. R. CIV. P. 55(b)(2), where the Clerk has entered their defaults and the well-pleaded Complaint establishes their liability under the Telephone Consumer Protection Act ("TCPA").

   Plaintiff's answer: Yes.

2. Whether Defendants are liable for thirty-two (32) statutory violations of the TCPA – 16 under 47 U.S.C. § 227(b) and 16 under § 227(c).

   Plaintiff's answer: Yes.

3. Whether the Court should treble the statutory damage award from $500 to $1,500 per violation because Defendants' violations were willful and/or knowing.

   Plaintiff's answer: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

FED. R. CIV. P. 55(b)(2); 47 U.S.C. § 227(b)(3), (c)(5); *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011); E.D. Mich. LR 55.2.

## INTRODUCTION

This is a case under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which Congress enacted in 1991 to protect consumers from the pervasive, invasive, and harassing intrusions associated with unwanted telemarketing. Congress found such telemarketing to be an intrusive invasion of privacy and, in response, empowered consumers to place their telephone numbers beyond the reach of commercial solicitors and to recover statutory damages when solicitors ignored that choice.

Since the TCPA's initial passage in 1991, Congress has amended it twice, once through the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, July 9, 2005, 119 Stat. 359, and again through the Pallone-Thune TRACED Act, Pub. L. No. 116-105, December 30, 2019, 133 Stat. 3274. Across the 35 years of the TCPA's existence, Congress left undisturbed the statute's operative definition of a "telephone solicitation" as "the initiation of a telephone call or message," 47 U.S.C. § 227(a)(4), in congruity with the Federal Communications Commission's regulatory construction which assert that the TCPA's do-not-call protections extend to text messaging.

Plaintiff placed his phone number on the National Do Not Call Registry in 2009. Defendants are telemarketers whom Plaintiff has sued twice before under the TCPA, with each prior suit resulting in settlement and voluntary dismissal. Two federal suits involving this same Plaintiff were not enough for Defendants to implement the most basic mitigation strategy against future suits. Resultantly, roughly five months after the parties settled and dismissed their last dispute, Defendants resumed sending Plaintiff unsolicited marketing messages to Plaintiff's same cellular telephone number as they had done in the past.

Having been served with this third action, Defendants elected not to appear. Their documented, repetitive illegal conduct justifies an award of trebled statutory damages. Plaintiff respectfully requests judgment of $48,000, his taxable costs, and post-judgment interest.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2025, the parties had their first legal encounters when Plaintiff sued Defendant Range View Management LLC twice under the TCPA. In *Rutila v. Range View Management LLC et al.*, Case No. 2:25-cv-10839-TGB-KGA (E.D. Mich. 2025), Defendant Range View was sued alongside 6 other defendants for illegal telemarketing under the TCPA, Michigan Consumer Protection Act, and Michigan

Home Solicitation Sales Act. This case settled privately and was voluntarily dismissed by Plaintiff on June 10, 2025.[1]

Merely 20 days after the first case was voluntarily dismissed, on June 30, 2025, Defendant Range View Management LLC, d/b/a Fresh Start Assist (Compl. ¶ 37, Compl. Exh. 2), began contacting Plaintiff again via telephone calls and text messages advertising "personal loan options." These calls continued through late August 2025, culminating in Plaintiff's filing of a second suit against only Defendant Range View Management, d/b/a Fresh Start Assist. *See Rutila v. Range View Management LLC*, Case No. 2:25-cv-12906-TGB-KGA (E.D. Mich. 2025). This second case was settled privately and voluntarily dismissed by Plaintiff on November 6, 2025.

Roughly five months after the parties' second case was voluntarily dismissed, Defendant Range View Management LLC, d/b/a Fresh Start Assist, began contacting Plaintiff once more. Plaintiff reached out to Defendants' former counsel prior to filing suit but was advised by Defendants' counsel that he would not be representing the Defendants in the forthcoming matter. Plaintiff has now brought

---

[1] The Complaint improperly states the dismissal date of the first case as June 16, 2025. Compl. ¶ 43. Plaintiff's notice of voluntary dismissal was filed June 10, 2025. *See Rutila v. Range View Management LLC et al.*, Case No. 2:25-cv-10839-TGB-KGA (E.D. Mich. 2025) at Dkt. 19. Rutila Decl. ¶ 17.

Defendant Range View Management LLC before this Court for the third time, including now its principal officer, Defendant Payam Sadeghi, as a co-defendant.

Plaintiff, filing *pro se*, initiated this instant action on May 1, 2026. Dkt. 1. The Clerk issued summons on May 21, 2026.[2] Dkt. 5. Plaintiff hired two process servers to conduct service of process on Defendant Payam Sadeghi. After Defendant Sadeghi was confirmed by his neighbors to reside at the address where service had been directed, and after numerous attempts at personal service, a process server conducted service via FED. R. CIV. P. 4(e)(2)(B) by leaving the service package at the same address with Defendant Sadeghi's mother, Ms. Ferret Rahim, on June 26, 2026. *See* Plaintiff's Affidavit in Support of Clerk's Entry of Default, Dkt. 7-1 at ¶¶ 4-5. Service of process on Defendant Range View Management LLC was completed on July 21, 2026, when a process server delivered service to Range View's registered agent in its state of LLC formation, Wyoming. *See* Plaintiff's Affidavit in Support of Clerk's Entry of Default, Dkt. 10-1 at ¶ 4.

Both Defendants opted not to enter an appearance. Plaintiff requested the Clerk issue an entry of default against Defendant Sadeghi on July 19, 2026, which was granted on July 20, 2026. Dkts. 7-8. Plaintiff requested the Clerk issue an entry of default against Defendant Range View Management LLC on August 12, 2026,

---

[2] This delay from filing to summons occurred when the U.S. Postal Service did not deliver Plaintiff's check to the Court for nearly 3 weeks after it was placed in a USPS drop box.

which was granted on August 13, 2026. Dkts. 10-11. Plaintiff has not been contacted by Defendants or their counsel since this litigation was filed. Rutila Decl. ¶ 20. Having observed the Clerk's entry of default on both Defendants, Plaintiff now moves the Court for Default Judgment.

## STANDARD OF REVIEW

### Default Judgment

Following the Clerk's entry of default, the Court may enter default judgment under FED. R. CIV. P. 55(b)(2). The Court may conduct an accounting, determine the amount of damages, establish the truth of any allegations by evidence, or investigate any other matter. *Id*. When a defendant is in default, the well-pleaded factual allegations in the Complaint, except those relating to damages, are taken as true. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citing *Thomson v. Wooster*, 114 U.S. 104, 112 (1885); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995)). FED. R. CIV. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed.).

The allegations as to the *amount* of damages are not admitted. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (unpublished) (quoting *Credit*

*Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Where damages are unliquidated, they must be proved, and the district court ordinarily must hold an evidentiary proceeding. *Antoine*, 66 F.3d at 110–11. Here, the TCPA fixes statutory damages at a sum certain per violation, and the number of violations is established by the admitted allegations of the Complaint. Therefore, FED. R. CIV. P. 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj*, 331 F. App'x at 354–55 (unpublished) (citing *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")). Although no evidentiary hearing is required to issue an award of a sum certain, the Court retains discretion to conduct one under FED. R. CIV. P. 55(b)(2).

## Jurisdiction

### 1. State of Michigan long-arm statute

Michigan's long-arm statutes reach corporations and individuals alike, upon their "transaction of any business within the state" or "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort," deeming such relationships "a sufficient basis of jurisdiction" for courts of record "to exercise limited personal jurisdiction" and to "render personal judgments"

arising out of those acts. MCL 600.715(1), (2); *accord* MCL 600.705(1), (2) (materially identical provision governing individuals).

**2. General and specific jurisdiction and due process requirements**

Specific jurisdiction reaches only those claims which arise out of, or relate to, a defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). In determining whether limited personal jurisdiction exists over a given defendant, the Court examines both the long-arm statute of the forum state and constitutional due process requirements. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). However, the Michigan long-arm statute "extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

The exercise of personal jurisdiction over a defendant is consistent with due process if the defendant purposefully availed himself of the privilege of acting or causing a consequence in Michigan, if the cause of action arose from his Michigan activities, and if his actions, or the consequences he caused, have a sufficiently substantial connection with Michigan so as to make the exercise of jurisdiction reasonable. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)

(citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "When the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) (citing *S. Mach. Co.*, 401 F.2d at 386).

**a. Purposeful availment**

Purposeful availment ensures that a defendant is not brought into a Michigan court "solely as a result of 'random,' fortuitous' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). It exists if the defendant created a "substantial connection" with the forum state by engaging in "significant activities within [the] State," or by creating "continuing obligations" to residents in that state. *Id.* at 475-76 (internal citation and quotation marks omitted). The inquiry focuses on contacts "that the 'defendant himself' creates with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475), and, as to an out-of-state intentional tortfeasor, "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286. Physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Air Prods. & Controls, Inc.*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 476).

**b. Defendants' connection with the forum state**

The Supreme Court in *Walden* highlighted the relevance of "two related aspects" of a "defendant's suit-related conduct" which "create a substantial connection with the forum state." *Walden*, 571 U.S. at 284. "First, the relationship must arise out of contacts that the '*defendant himself*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). Next, "The Court's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id*. at 286.

## ARGUMENT

**1. This Court has subject matter jurisdiction over the claims.**

This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, as the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Venue is proper under 28 U.S.C. § 1391(b)(2), as events or omissions giving rise to these claims occurred in Michigan. Compl. ¶ 10.

**2. This Court has personal jurisdiction over both Defendants.**

**a. Court's jurisdiction over Defendant Range View Management LLC**

"[E]ven the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction." *Oberlies v. Searchmont Resort, Inc.*, 246 Mich.

App. 424, 426 (2001). Plaintiff's claims arise from 16 messages he received from Defendant Range View Management LLC, a Wyoming LLC, which triggered Michigan's long-arm statute when it purposefully conducted business in Michigan by sending telemarketer advertising to Plaintiff's cellular telephone. Plaintiff is a Michigan resident. He has used a cellular telephone with an area code of (810), which under the North American Numbering Plan is assigned to numbers in Michigan's east-central region, since 2007. Compl. ¶¶ 11, 32, 43; Rutila Decl. ¶¶ 12-13, Ex. 2. At that time, Plaintiff resided in Genesee County. Plaintiff moved to Wayne County in 2018 and has remained a full-time resident there ever since. Rutila Decl. ¶¶ 5-10. Defendant Range View's attempts to contact Plaintiff at his Michigan-based cellular telephone number to sell him its loan and debt relief services were repetitive, concerted efforts to do business in this state.

The Sixth Circuit acknowledges injuries-in-fact under the TCPA. *See*, e.g., *Ward v. NPAS, Inc.*, 63 F.4th 576, 581 (6th Cir. 2023) (finding one unwanted phone call is injury enough, and collecting sister-circuit cases holding that as few as one unwanted text message inflicts an Article III injury). Additionally, because Plaintiff was on the National Do Not Call Registry and had not consented to contact from Defendants – who were already on notice not to contact Plaintiff as a result of their two prior federal suits – Defendants' actions themselves resulted in an action for tort under the TCPA, thus triggering Michigan's long-arm statute.

The next question is whether the Court's exercise of jurisdiction is consistent with due process, beginning first with the purposeful availment test. Indeed, the mere act of advertising in Michigan is sufficient to reach a determination of purposeful availment. *Oberlies*, 246 Mich. App. at 434. A foreign corporation that advertises in Michigan can reasonably expect to be called to defend suits in Michigan charging unlawful advertising or alleging that the advertising, itself, directly injured a Michigan resident. *Id.* at 437. The Sixth Circuit holds that "actual contract formation need [not] take place in the forum state for defendant to do business in that state." *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 907 (6th Cir. 1988).

Defendants' contacts were not random or fortuitous. Defendants used two phone numbers to send Plaintiff 16 prefabricated text messages advertising their services. Plaintiff never consented to receiving those contacts. Defendants had an obligation to respect Plaintiff's listing on the National Do Not Call Registry. Having been sued twice before by this same Plaintiff for ostensibly the same conduct, Defendants were on notice that Plaintiff should not be contacted, and this suit came to them as no surprise. Compl. ¶¶ 2, 41. Because Plaintiff received these illegal telemarketing advertising messages from a foreign corporation, the Court should find that Defendant Range View Management purposefully availed itself of the privilege of acting or causing a consequence in Michigan.

Next, this cause of action arose from Defendant Range View Management LLC's contacts that it *itself* intentionally created and *sent into* the forum state, which satisfies the second element of the due process analysis. An illustration of Defendant Range View's intentionality is its sending of messages to a party – Plaintiff – by whom it had been sued twice before in 2025 for ostensibly the same conduct. Those prior suits notwithstanding, Defendants took no reasonable precautions to ensure they did not violate the TCPA again, beginning first by contacting Plaintiff while he was on the Federal Do Not Call Registry and without having the required consent to contact him.

Finally, reasonableness is satisfied by inference where the first two elements are met. That inference is appropriate here. Plaintiff did nothing to invite or provoke Defendants' activities in Michigan. His prior litigation should have been enough for Defendants to prevent any future violations. It is their failure to do so which has landed them back in this District once again. Defendants face no unfair burden.

**b. Court's jurisdiction over Defendant Payam Sadeghi.**

The Court has jurisdiction over Defendant Payam Sadeghi because he personally directed, authorized, and ratified the telemarketing campaign that sent 16 text messages to Plaintiff's cellular telephone. By all accounts, and based on all available public information, Defendant Sadeghi is the sole corporate officer of Range View Management LLC: he is listed as both a manager/member and the

registered agent on Range View's 2019 LLC Statement of Information in California, and he personally signed Range View's 2024, 2025, and 2026 Wyoming LLC Annual Reports. Compl. ¶ 13; Compl. Exh. 3 at 2, 5–7. His corporate office does not immunize him from liability. "[T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).

As Range View's sole officer, Defendant Sadeghi had direct control over, the power to authorize, and the ability to ratify the campaign that targeted the Michigan-residing Plaintiff, satisfying purposeful availment. Compl. ¶¶ 13, 14, 15(a)–(d). He had personal knowledge of Range View's numerous federal TCPA lawsuits, filed by this Plaintiff and several others, yet failed to alter Range View's business practices so as to avoid violating the TCPA or, at a bare minimum, avoid contacting this Plaintiff, who had sued Range View twice before. Compl. ¶ 15(e). Defendants' contacts with Plaintiff at Defendant Sadeghi's direction and control were therefore knowing and neither random nor fortuitous. "[T]he Defendant himself" created these forum contacts by overseeing the telemarketing campaign and failing to preclude Plaintiff from inclusion on the contact list. *See Walden*, 571 U.S. at 286.

Having personally directed unlawful contacts at the Michigan-residing Plaintiff after his company had twice settled with that same Plaintiff over the same

conduct, Defendant Sadeghi faces no unfair burden in being haled to this Court, particularly after declining to appear. In any event, the Court may draw an inference of reasonableness because Defendant Sadeghi purposefully availed himself of doing business in Michigan and his Michigan activities gave rise to this suit. *See First Nat'l Bank*, 680 F.2d at 1126.

**3. Defendants' liability is established through default, and Defendants have forfeited any affirmative defense.**

By failing to plead or otherwise defend, Defendants have admitted the well-pleaded factual allegations of the Complaint and have forfeited any affirmative defense to liability. Defendants, who were both properly served and who were on notice of this action through Plaintiff's good-faith communication with Defendants' prior counsel, opted not to appear. Thus, they are not entitled to the benefit of a merits defense they declined to raise.

Both Defendants Range View Management LLC and Payam Sadeghi are jointly and severally liable for the actions giving rise to Plaintiff's claims. Compl. ¶ 15. "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (citing *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4074620 (W.D. Mich. June 21, 2012); *Texas v. Am. Blastfax*, 164 F. Supp. 2d

892, 898 (W.D. Tex. 2001); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415–16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.")).

As Range View's sole corporate officer of record, Defendant Sadeghi personally directed, authorized, and ratified the telemarketing campaigns giving rise to this action. Compl. ¶ 15(a)–(d). Those campaigns included Plaintiff, a Michigan consumer, who (1) had registered his number on the National Do Not Call Registry; (2) had never provided the consent for contact required by federal regulation; and (3) had twice sued Range View under the TCPA. No properly supervised campaign would have included Plaintiff on its contact list. Defendant Sadeghi was the only person with the authority and the ability to prevent it. Accordingly, he is personally liable for each violation, jointly and severally with Defendant Range View Management LLC.

Defendant Range View Management LLC, for its part, is liable as a result of the campaigns its sole officer directed on its behalf under federal common-law agency principles of actual authority, apparent authority, and ratification. *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd 6574, 6585–86 (2013). A single entry of judgment against both Defendants, jointly and severally, is appropriate.

**4. Defendants' text messages are actionable under the TCPA.**

The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message" for a commercial purpose. 47 U.S.C. § 227(a)(4). The FCC's parallel regulation defines the term identically, 47 C.F.R. § 64.1200(f)(15), and expressly extends the do-not-call rules of paragraphs (c) and (d) to "text messages to wireless telephone numbers," *id.* § 64.1200(e). The statutory and regulatory texts thus reach message-based solicitations by their own terms. *See Howard v. Republican National Committee*, 164 F.4th 1119, 1123–25 (9th Cir. 2026) (relying on plain-language reading of the TCPA to conclude that text messages are calls for TCPA purposes).

Although this Court is no longer bound by the FCC's interpretation of the TCPA, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 148 (2025), the Commission's construction remains entitled to respect commensurate with its "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). That persuasive power is measured by the thoroughness evident in the agency's consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. *Id*. Here, those factors weigh heavily in Plaintiff's favor.

First, the FCC has applied the do-not-call framework to text messages since 2003. *See Report and Order*, CG Docket No. 02-278, FCC 03-153 (2003) (codified at § 64.1200(e)). Next, FCC reaffirmed that texts are "calls" for the purpose of the

TCPA in its 2015 Omnibus ruling, *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd 7961, 8017 (2015).

Once more, in 2023, FCC reaffirmed that TCPA's do-not-call provisions were inclusive of text messages. *In re Targeting & Eliminating Unlawful Text Messages*, FCC 23-107 (rel. Dec. 18, 2023). Under *Skidmore*, the Court may find FCC's long-held position persuasive on the basis of the thoroughness, validity, and consistency of its reasoning. Consumers and registrants of the Do Not Call Registry, including Plaintiff, have relied upon this settled understanding when placing their wireless numbers on the Registry, expecting that by doing so, they would have some degree of protection from invasive, repetitive, and harassing telephone communications, including text messages.

The text messages at issue herein were telephone calls for the purpose of TCPA's private rights of action at both § 227(b) and § 227(c)(5). This conclusion is supported by FCC's longstanding and thoroughly reasoned TCPA regulatory construction, which prohibits telemarketers like Defendants from sending consumers text message-based marketing without prior express invitation or permission. *See* 47 C.F.R. § 64.1200(c)(2), (f)(15)(i). No controlling authority in this Circuit holds otherwise.

**a. Plaintiff's § 227(b) claims**

Count I arises under 47 U.S.C. § 227(b)(1)(A)(iii), which forbids using an automatic telephone dialing system to text a wireless number without prior express consent. A text message to a cellular telephone qualifies as a "call" under § 227(b)(1)(A)(iii). *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *see also Dobronski v. WinRed, Inc.*, No. 2:24-cv-12513, 2026 WL 2168723, at *2 (E.D. Mich. July 28, 2026) (recognizing that "a text message to a cellular telephone qualifies as a 'call' under § 227(b)(1)(A)(iii)").

Defendants transmitted 16 text messages through an automated telephone dialing system[3]. Compl. ¶¶ 46, 50–51; Rutila Decl. ¶¶ 12-14, Ex. 2; *see also id.* ¶ 15, Ex. 3. These messages bear the hallmarks of machine generation rather than human authorship. They follow identical, rotating scripted templates. Each begins with a field greeting, in which the recipient's name is auto-populated from a lead record pairing Plaintiff's name to his phone number, as opposed to being individually, manually composed. Compl. ¶ 50; Rutila Decl. ¶ 14. The texts were sent on a regular, high-volume cadence, about once per day from April 1, 2026 until April 23, 2026. Compl. ¶ 46; Rutila Decl. ¶ 14. Finally, they were sent from more than one

[3] Although *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), construes the definition of "autodialer" narrowly, *id*. at 397, the Complaint's admitted allegations that Defendants used an automated system to generate and transmit these messages are sufficient to establish a § 227(b) violation at the default stage.

originating number in parallel. *Id.* By virtue of Defendants' default, these allegations are deemed admitted and taken as true.

**b. Plaintiff's § 227(c) claims**

While constructing the language of the statute which pertains to "Protection of Subscriber Privacy Rights" under § 227(c), Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). When addressing plaintiffs' TCPA private right of action under this same section in § 227(c)(5), Congress briefly invoked the term "telephone call," extending the action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). However, when Congress addressed affirmative defenses to those same claims, it again invoked "telephone solicitations": it is an affirmative defense that a defendant "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." *Id.*

By specifying that an affirmative defense to a plaintiff's claim under § 227(c)(5) may encompass evidence of establishing practices and procedures to effectively prevent telephone solicitations, referring back to this term's definition

under § 227(a)(4), the full context of this section of the TCPA requires a conclusion that the private right of action may stem from the improper receipt of a telephone *solicitation* – a "call or a message," as contemplated in the statutory definition.

If the Court were for any reason ambivalent about awarding Plaintiff trebled statutory damages for his 16 claims under § 227(c)(5), the Court should still award trebled statutory damages for Plaintiff's 16 claims under § 227(b), under which the courts broadly agree, or otherwise do not contravene, that text messages sent for the purpose of solicitation are recoverable.

**5. Under *Charvat*, 16 texts at issue herein permits recovery for a combined total of 32 violations pursuant to the private rights of action in § 227(b) and § 227(c).**

The TCPA provides statutory damages of $500 for each violation of its automated-call provisions, 47 U.S.C. § 227(b)(3)(B), and $500 for each violation of its Do Not Call Registry provisions, § 227(c)(5)(B). The Sixth Circuit's decision in *Charvat v. NMP*, 656 F.3d 440, governs how those violations are calculated.

The Sixth Circuit holds that § 227(b) and § 227(c) contain separate rights of action that permit a statutory damage recovery under *both* subsections on a per-call basis.

> We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call.

*Charvat v. NMP*, 656 F.3d at 449.

At the same time, a plaintiff cannot recover damages for multiple violations of regulations that fall within the same statutory subsection (i.e., recoveries on a "per-violation" basis). The TCPA "unambiguously allows for statutory damages on only a per-*call* basis." *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631 (6th Cir. 2009) (emphasis added). It is for this reason that Plaintiff's original demand for trebled damages on a per-violation basis totaling $120,000 in his Complaint has been reduced in this Motion to $48,000.

In light of the above, each of Defendants' 16 text messages supports one violation under § 227(b) (Count I) and one violation under § 227(c) (Counts II through V, which merge into a single per-message recovery). 16 messages thus yield thirty-two statutory violations — 16 under § 227(b) and 16 under § 227(c). At the base rate of $500, those 32 violations entitle Plaintiff to $16,000 as an irreducible minimum, prior to any trebling.

Because Counts II-V under § 227(c) merge pursuant to *Charvat v. NMP*, 656 F.3d at 449, Plaintiff's recovery on TCPA's Do Not Call provisions is carried in full by any single surviving § 227(c) count — most naturally Count II, the Do Not Call Registry claim, which rests on the statutory and regulatory prohibition of "telephone solicitations" (defined to include a "message," 47 U.S.C. § 227(a)(4)). Accordingly,

should the Court decline to enter judgment on the § 227(c) counts, Plaintiff would remain entitled to judgment on the 16 § 227(b) violations.

Plaintiff recognizes that the Court has discretion to treble the damage award *up to* $1,500 per violation and that the Court could treble damages to a lower amount. Furthermore, should the Court decline to treble the damages, Plaintiff would remain entitled to the statutory, non-trebled $500-per-violation damage award. The Court may therefore enter judgment at any of the following levels, each supported by the record: $48,000 (32 violations, trebled); $24,000 (either the § 227(b) count or the § 227(c) count alone, trebled); or $16,000 (32 violations at the base rate). However, as explained below, an award of maximum trebled damages is appropriate given Defendants' conduct and the parties' litigation history.

**6. The Court Should Treble the Award Because Defendants' Violations Were Willful and Knowing.**

The Court may treble the statutory award to $1,500 per violation upon finding that Defendants acted "willfully or knowingly." 47 U.S.C. § 227(b)(3), (c)(5). In this District, that standard is "satisfied by merely knowing conduct" and does not require proof that Defendants knew their conduct was unlawful. *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (quoting *Alea London Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011)). Plaintiff satisfies that standard, and, moreover, would satisfy an even stricter standard requiring knowledge if it were required. Specifically, Defendants knew

Plaintiff had not consented to contacts from Defendants, had placed his number on the National Do Not Call Registry, and knew that their telemarketing violated the Act. Compl. ¶¶ 41-44; Rutila Decl. ¶¶ 11, 17, Ex. 1. Willfulness is therefore established under any articulation of the standard. Having declined to appear and assert any bona fide error, Defendants have forfeited any claim of good-faith mistake.

In a world where ads are ubiquitous, from highway billboards to social media platforms to news websites, radio stations, online video commentary, and more, consumers expect that the text messaging function of a person's private cellular telephone will remain unencumbered by advertising, *except* when they have given advertisers consent to contact them. Ads that are legally displayed in other mediums are often tailored to specific consumers based on their browsing history, GPS locations, age, gender, and more. Companies which engage in this type of advertising do so, broadly speaking, with the intent to sell a product or service to an interested consumer. Plaintiff, however, is not a reasonably construed advertising target for Defendants' services in the first place. Every message referred to "a personal loan request" that Plaintiff never made and an "approval" that never existed. The service Defendants purport to offer on their website – tax debt relief programs – is one Plaintiff could never need, because he *does not* and *has never* owed back taxes or any other tax debt to any government. Compl. ¶¶ 37, 39; Rutila

Decl. ¶ 16. Plaintiff had no prior business relationship with Defendants. Compl. ¶ 40; Rutila Decl. ¶ 16. He had not provided Defendants with consent to contact him. Compl. ¶ 41; Rutila Decl. ¶ 16. Defendants knew precisely what the TCPA required. Defendant Range View Management LLC has been named in at least 11 federal TCPA actions since 2023. Furthermore, making Defendants' contacts all the more unreasonable, Plaintiff had sued Defendants twice before for ostensibly the same conduct, had settled twice with Defendants, and had twice voluntarily dismissed those claims. Now in their third federal complaint with Plaintiff, Defendants have opted not to appear.

Defendants acted willfully in spite of that knowledge. After the parties' first settlement and dismissal, they resumed contacting Plaintiff within 20 days; after the second, they resumed contacting Plaintiff within roughly five months. Compl. ¶¶ 44, 76. When Plaintiff realized Defendants were contacting him *for a third time*, he reached out to Defendants' prior counsel to notify Defendants of his intent to sue for a third time. Once this notification was sent and acknowledged by Defendants' prior counsel, all further illegal contacts with Defendants ceased. Rutila Decl. ¶¶ 18-19. Defendants *do* have the ability to prevent their telemarketing messages from being sent to Plaintiff but do so only when faced with new, imminent litigation.

Defendants' default, in light of (1) having been notified of and reacting to the possibility of this instant action being filed when Plaintiff notified their prior

counsel; (2) two prior settlements; and (3) proper service of this instant action on Defendants, forecloses the ability for Defendants to assert any bona fide error or justification in defense of the claims herein. Accordingly, the Court should exercise its discretion to treble the damages award to $1,500 for each of the 32 violations, for a total of $48,000, a sum well within the amount demanded in the Complaint. FED. R. CIV. P. 54(c).

**7. Costs and post-judgment interest.**

Upon entry of judgment, Plaintiff will be entitled to recover his taxable costs under 28 U.S.C. § 1920 and FED. R. CIV. P. 54(d)(1) and post-judgment interest under 28 U.S.C. § 1961.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against Defendant Range View Management LLC and Defendant Payam Sadeghi, jointly and severally, and award: (1) statutory damages of $48,000, representing 32 violations of the TCPA trebled to $1,500 each; (2) Plaintiff's taxable costs under 28 U.S.C. § 1920; and (3) post-judgment interest under 28 U.S.C. § 1961.

Respectfully submitted,
Dated: September 5, 2026

/s/ Harold E. Rutila, IV
Harold E. Rutila, IV
*Pro se*
11800 Merriman Rd
#51552
Livonia, MI 48151
h.rutila@gmail.com
(810) 845-3497